WILLIAM HOWARD SHAFFNER, JR., Plaintiff v. WESTINGHOUSE ELEC-
TRIC CORPORATION, Defendant

No. 9021SC138

(Filed 18 December 1990)

**Master and Servant § 10.2 (NCI3d)— workers' compensation—
termination for misrepresenting extent of disability—no viola-
tion of statute**

 The evidence supported the jury's verdict finding that
plaintiff was not terminated from his employment in violation
of N.C.G.S. § 97-6.1(a) because he instituted a claim under
the Workers' Compensation Act where it showed that the
employer did not question the fact of plaintiff's disability but
terminated plaintiff for misrepresentations about the extent
of his disability.

**Am Jur 2d, Workmen's Compensation § 55.**

**Recovery for discharge from employment in retaliation
for filing workers' compensation claim. 32 ALR4th 1221.**

APPEAL by plaintiff from judgment entered 21 July 1989 in
FORSYTH County Superior Court by *Judge W. Steven Allen.* Heard
in the Court of Appeals 30 August 1990.

 *Herman L. Stephens for plaintiff-appellant.*

 *Womble, Carlyle, Sandridge & Rice, by Charles F. Vance,
Jr., C. Daniel Barrett and Clayton M. Custer, for defendant-
appellee.*

DUNCAN, Judge.

 William Shaffner, Jr. ("plaintiff") was employed by Westinghouse
Electric Corporation ("defendant") for over fourteen years. At the
time of his final injury he was working as a senior electrician.
During the course of his employment plaintiff sustained a number
of injuries; he received workers' compensation benefits for all those
injuries for which claims were made. On 15 April 1987, plaintiff's
supervisor directed him to return an electric motor to a storage
crib. The particular building in which the crib was housed did
not have a storage attendant to receive merchandise, so plaintiff
had to lift the motor himself—something he did not normally do.

Immediately after lifting the motor, the muscles in his lower back began to tighten up, and his condition worsened throughout the day.

The next morning plaintiff experienced low back pain in addition to the tightened muscles. His condition worsened after he returned to work, and by Monday of the following week he went to see Dr. Middleton, the plant doctor. Dr. Middleton prescribed medication and recommended a week's bed rest; plaintiff nevertheless continued to work that week and the following one. When he was seen again, it was recommended that he visit a specialist, and he was eventually seen by Dr. Holthusen, an orthopaedic surgeon who had operated on him previously. Despite recurring pain, plaintiff continued to work until 26 May 1987, when Dr. Holthusen placed him on bed rest.

On 30 May 1987, plaintiff took his children to the annual company picnic at the Carowinds Amusement Park, and accompanied his sons on several rides. On 2 June 1987, plaintiff returned to Dr. Holthusen, who continued to state that plaintiff should not work. Dr. Holthusen was not aware that plaintiff had gone to Carowinds and ridden on the rides.

On 29 June 1987, plaintiff returned to see Dr. Holthusen, and was released to return to work. When plaintiff reported to work he was placed on suspension without pay pending an investigation into the circumstances surrounding his disability. Plaintiff was subsequently terminated effective 29 June 1987. He was given the following reason:

> After reviewing all the events, circumstances and facts surrounding your disability condition we have no alternative except to convert your indefinite suspension into discharge for violation of the Plant Rules of Conduct . . . Misrepresentation and/or falsification of records or attendance reports.

An internal company appeals board upheld the termination, and plaintiff then brought this action seeking damages for wrongful discharge and reinstatement to his prior position. The jury found that plaintiff had not been terminated because he had instituted a workers' compensation claim, and held in favor of the defendant. The trial court denied plaintiff's motion for judgment notwithstanding the verdict, and this appeal followed.

SHAFFNER v. WESTINGHOUSE ELECTRIC CORP.

[101 N.C. App. 213 (1990)]

I

Plaintiff's primary argument on appeal is that the trial court erred in denying his motions for a directed verdict and for judgment notwithstanding the verdict, because defendant's explanation of plaintiff's determination establishes that it discharged him for instituting a workers' compensation claim. Since the standard for determining the appropriateness of a motion for directed verdict and a motion for judgment notwithstanding the verdict is the same, *Dickinson v. Pake*, 284 N.C. 576, 584-85, 201 S.E.2d 897, 903 (1974), the following discussion applies to both.

In considering a plaintiff's motion for directed verdict, the defendant's evidence must be taken as true and must be considered in the light most favorable to defendant, giving defendant the benefit of every reasonable inference to be drawn therefrom. *See, e.g., Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977). Plaintiff argues that defendant's own evidence establishes a violation of N.C. Gen. Stat. Section 97-6.1 which provides, in pertinent part, as follows:

Protection of claimants from discharge or demotion by employers.

(a) No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the North Carolina Workers' Compensation Act, or has testified or is about to testify in any such proceeding.

There is no dispute here that plaintiff did, in fact, institute a claim. Plaintiff argues further that by terminating him for misrepresenting his disability, defendant was challenging the existence of his disability — a determination which is within the exclusive province of the Industrial Commission. *See* N.C. Gen. Stat. Section 97-84. Plaintiff argues that the only avenue open to defendant to contest his disability was through the workers' compensation process, and that defendant's action was in effect an impermissible collateral attack on the Commission's jurisdiction.

Although plaintiff makes a compelling argument, we are constrained to disagree for two reasons. First of all, the anti-retaliation language of Section 97-6.1(a) is limited to an employee's instituting a charge or testifying in a proceeding. Here, neither of those specific actions precipitated defendant's response. Plaintiff instituted his

SHAFFNER v. WESTINGHOUSE ELECTRIC CORP.

[101 N.C. App. 213 (1990)]

claim under the Workers' Compensation Act on 18 April 1987. He was suspended on 29 June 1987 and terminated on 17 July 1987, retroactively effective on 29 June 1987. There is thus no close temporal connection between plaintiff's instituting a charge and his termination. Plaintiff notes himself that prior to this most recent injury, he had suffered injuries on the job for which he received workers' compensation benefits.

Plaintiff's broader argument is that defendant's terminating him for misrepresentation challenged the very issue before the Industrial Commission—the existence of his disability. That argument can be responded to by making a point that even plaintiff recognizes: Defendant was not questioning his representations about the *fact* of his disability, but rather its *extent*. Dr. Holthusen also testified that upon learning of plaintiff's trips and activities, he felt that plaintiff had not been honest with him. Under plaintiff's interpretations of the statute, an employee could sustain a minor, but disabling injury, and misrepresent the gravity of it without fear of sanction.

The jury here found that the defendant did not discharge plaintiff because he instituted a claim under the Workers' Compensation Act. Giving the defendant, as we must, the benefit of every reasonable inference to be drawn from the facts, we cannot find that the trial court erred in denying plaintiff's motions for summary judgment and judgment notwithstanding the verdict.

II

We have examined plaintiff's other assignments of error and find them to be without merit.

Accordingly, the judgment appealed from is

Affirmed.

Judges COZORT and ORR concur.