SUSAN F. JOHNSON, Plaintiff v. THE TRUSTEES OF DURHAM TECHNICAL COMMUNITY COLLEGE, Defendant

No. COA99-676

(Filed 29 August 2000)

### 1. Employer and Employee— retaliatory discharge—failure to renew employment contract

The failure to renew an employment contract qualifies as a retaliatory action in violation of the Retaliatory Employment Discrimination Act under N.C.G.S. § 95-240(2) because it constitutes an adverse employment action.

### 2. Employer and Employee— retaliatory discharge—employee filed workers' compensation claim

The trial court did not err by granting summary judgment in favor of defendant employer as to plaintiff employee's claims that she was discharged by her employer in retaliation for filing a workers' compensation claim, because: (1) the evidence does not suggest that defendant failed to renew plaintiff's contract in order to forestall the filing of another workers' compensation claim since plaintiff's second injury was not work-related; and (2) defendant entered into three additional contracts with plaintiff after she filed a workers' compensation claim, and defendant's refusal to renew plaintiff's contract was not close in time to her workers' compensation claim.

### 3. Disabilities— qualified individual—teacher at a jail—wheelchair—banned from jail—anonymous allegations of illegal misconduct

The trial court erred by directing verdict on claims under the Americans with Disabilities Act against plaintiff employee who sat in a wheelchair and taught literary skills to inmates at a jail because viewing the evidence in the light most favorable to plaintiff reveals that plaintiff was a qualified individual under 42 U.S.C. § 12111(9) to teach at the jail, even though plaintiff was banned from the jail after the program director confirmed anonymous allegations of plaintiff's illegal conduct, since: (1) defendant decided not to renew plaintiff's contract before the anonymous phone calls of plaintiff's misconduct were received and before plaintiff was banned from the jail; and (2) an employer may not rely on evidence of employee misconduct which is acquired after

JOHNSON v. TRUSTEES OF DURHAM TECH. CMTY. COLL.

[139 N.C. App. 676 (2000)]

the employment decision in question to defend the employment decision.

## 4. Disabilities— qualified individual—teacher at a jail—wheelchair—poor attendance

The trial court erred by directing verdict on claims under the Americans with Disabilities Act against plaintiff employee who sat in a wheelchair and taught literary skills to inmates at a jail because viewing the evidence in the light most favorable to plaintiff reveals that plaintiff was a qualified individual under 42 U.S.C. § 12111(9) to teach at the jail, even though defendant alleges that plaintiff had poor attendance at her job, since: (1) plaintiff was able to teach three out of five employment periods without incident, and one employment period in which she missed only two weeks out of twelve weeks of classes; (2) it was only during one employment period that plaintiff missed a significant number of classes; (3) plaintiff's absences were due solely to complications related to her disability and did not establish a clear pattern of absenteeism; (4) following her significant period of absence during the third employment period, defendant did not express that the extended absence was disruptive or excessive and even offered her two additional periods of employment; and (5) plaintiff's employment relationship with defendant did not end solely because of excessive absenteeism.

## 5. Disabilities— teacher at a jail—wheelchair—no presumption of non-discrimination for employer

Defendant employer was not entitled to a directed verdict on plaintiff employee's claims under the Americans with Disabilities Act based on the presumption of non-discrimination that arises when the same person who hired plaintiff also fired her.

Appeal by plaintiff from judgment entered 23 December 1997 by Judge Henry V. Barnette and judgment entered 18 December 1998 by Judge Narley L. Cashwell in Superior Court, Durham County. Heard in the Court of Appeals 14 March 2000.

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher and Caitlyn Fulghum, for plaintiff-appellant.*

*Haywood, Denny & Miller, L.L.P., by George W. Miller, Jr. and George W. Miller, III, for defendant-appellee.*

*Patterson, Harkavy & Lawrence, L.L.P., by Burton Craige, for the North Carolina Academy of Trial Lawyers and the American Civil Liberties Union of North Carolina Legal Foundation, amici curiae.*

TIMMONS-GOODSON, Judge.

The present case arises out of Susan F. Johnson's ("plaintiff") charges of discrimination filed against Durham Technical Community College ("defendant" or "Durham Tech") under the Retaliatory Employment Discrimination Act and the Americans with Disabilities Act. Plaintiff appeals adverse rulings that resulted in a denial of her claims.

Plaintiff taught literacy skills to inmates at the Durham County Jail Annex. She obtained the job by signing a contract with Durham Tech as a part-time instructor of a basic skills course. Pursuant to the contract, plaintiff taught from November of 1993 until mid-February of 1994. Over a two-year period, plaintiff and defendant entered into seven more contracts, for employment periods which lasted for a term of one to three months, depending on the length of the literacy course.

Plaintiff is unable to walk without crutches as a result of having contracted polio as a child. Prior to moving to North Carolina, she taught Latin in Troop County, Georgia. In 1986, plaintiff applied for and received permanent partial disability from her post as a teacher in Georgia and permanent total disability from the Federal Government.

In order to teach her class at the jail annex, plaintiff drove to the jail in her own car, entered on crutches, transferred into a wheelchair she kept at the jail, and taught class from the wheelchair. On 8 June 1994, plaintiff fell from her crutches while opening a security door at the jail, breaking a vertebra in her spine. She filed for workers' compensation benefits on 10 June 1994 and received payment for medical bills and temporary total disability. On 2 January 1995, plaintiff returned to the jail to teach under her fourth employment contract period. Following her fall, plaintiff used her wheelchair exclusively because walking was more difficult. From her home, plaintiff was lifted in her wheelchair onto a public transport van which drove her to the jail. She then rolled into the jail annex and taught her class from her wheelchair.

JOHNSON v. TRUSTEES OF DURHAM TECH. CMTY. COLL.

[139 N.C. App. 676 (2000)]

In February of 1995, plaintiff fell in a bathtub at home and broke her leg. She returned to the jail approximately two weeks later and continued to teach from her wheelchair with her leg in a cast.

Administrators at Durham Tech grew increasingly concerned about the possibility plaintiff would suffer another accident at the jail, exposing Durham Tech to liability. Additionally, the administrators were concerned about plaintiff's absences as a result of her injuries and her requirements of accommodations such as having guards at the jail assist her to open and close doors.

On 16 June 1995, plaintiff met with Russ Conley ("Conley"), the Director of the Adult and Basic Skills program at Durham Tech. Conley proposed that plaintiff teach on campus rather than at the jail at the expiration of her contract. Conley stated that having plaintiff teach at the jail "could prove to be a liability for Durham Tech." Conley discussed the possibility of plaintiff teaching students with disabilities and mental illnesses. Plaintiff refused the transfer, stating that she had no special education training. Conley informed plaintiff on 16 June 1995 that she would not be returning to the jail and that he had already hired someone to replace her.

On 21 June and 24 June 1995, the Dean of Adult and Continuing Education at Durham Tech, Art Clark, received anonymous phone calls alleging that plaintiff used drugs, gave drugs to inmates, carried a loaded weapon, supplied inmates with bullets, and had sex with inmates. Larry Haverland ("Haverland"), Deputy Director for Inmate Programs, testified that he corroborated some of the anonymous charges against plaintiff on 23 June 1995. Haverland did not know who had conducted the informal investigation of the anonymous charges or whether that individual was reliable. The corroborated charges were that plaintiff had taken contraband into the jail in the form of "possibly lighters or matches or something" and that plaintiff had visited an inmate at another prison. Haverland testified that a teacher does not violate jail rules by visiting an inmate at another prison. Plaintiff was not asked to answer the charges of the anonymous caller until after she filed charges of discrimination against Durham Tech in the fall of 1995.

On 26 June 1995, Conley approached plaintiff at the jail annex and informed her that her position would end on 28 June 1995 when her contract expired. Plaintiff was not offered another teaching contract with Durham Tech.

During the week before trial, Durham Tech identified the anonymous caller as Cynthia Wilson ("Wilson"), a nursing aide who had worked in plaintiff's home. At trial, plaintiff denied Wilson's charges. Two nursing aides who assisted plaintiff at the same time as Wilson testified that they had never seen any signs of drug use or improper conduct by plaintiff.

Plaintiff initiated charges of discrimination with the North Carolina Department of Labor under the Retaliatory Employment Discrimination Act and with the Equal Employment Opportunity Commission under the Americans with Disabilities Act. After exhausting her administrative remedies, plaintiff filed a complaint alleging that defendant had removed her from its employment in violation of state and federal law.

On 23 December 1997, Judge Henry V. Barnette of the Superior Court, Durham County partially allowed defendant's Motion for Summary Judgment, dismissing plaintiff's claims brought pursuant to the North Carolina Retaliatory Employment Discrimination Act, but denying summary judgment as to plaintiff's cause of action brought pursuant to the Americans with Disabilities Act. Specifically, Judge Barnette denied plaintiff's Motion for Summary Judgment as to whether plaintiff was a "qualified individual with a disability" for purposes of the Americans with Disabilities Act.

On 18 December 1998, Judge Narley L. Cashwell of the Superior Court, Durham County granted defendant's Motion for Directed Verdict as to plaintiff's claim under the Americans with Disabilities Act. Plaintiff appeals.

---

On appeal, plaintiff argues that the trial court erred in: (I) granting defendant's Motion for Summary Judgment as to plaintiff's claims under the Retaliatory Employment Discrimination Act; and (II) directing a verdict against plaintiff as to her claims under the Americans with Disabilities Act.

## I. RETALIATORY DISCRIMINATION ACT CLAIM

By her first assignment of error, plaintiff argues that the trial court erred in granting defendant's Motion for Summary Judgment as to plaintiff's claims under the Retaliatory Employment Discrimination Act. We cannot agree.

Summary judgment is proper where there is no genuine issue as to any material fact. *Alltop v. Penney Co.*, 10 N.C. App. 692, 179 S.E.2d

885 (1971). An issue is genuine where it is supported by substantial evidence. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). A genuine issue of material fact is of such a nature as to affect the outcome of the action. *Smith v. Smith*, 65 N.C. App. 139, 308 S.E.2d 504 (1983). The moving party bears the burden of establishing the lack of a triable issue of fact. *Pridgen v. Hughes*, 9 N.C. App. 635, 177 S.E.2d 425 (1970). The motion must be denied where the non-moving party shows an actual dispute as to one or more material issues. *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972). As a general principle, summary judgment is a drastic remedy which must be used cautiously so that no party is deprived of trial on a disputed factual issue. *Billings v. Harris* Co., 27 N.C. App. 689, 220 S.E.2d 361 (1975), *aff'd*, 290 N.C. 502, 226 S.E.2d 321 (1976).

The North Carolina Retaliatory Employment Discrimination Act ("REDA"), enacted in 1992, prohibits discrimination against an employee who has filed a workers' compensation claim. N.C. Gen. Stat. § 95-240, *et. seq.* (1999). In pertinent part, the Act provides:

(a) No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to do any of the following:

    (1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to any of the following:

        a. Chapter 97 of the General Statutes.

N.C. Gen. Stat. § 95-241 (1999).

REDA replaced North Carolina General Statutes section 97-6.1, the purpose of which was to promote an open environment in which employees could pursue remedies under the Workers' Compensation Act without fear of retaliation from their employers. *Abels v. Renfro Corp.*, 108 N.C. App. 135, 423 S.E.2d 479 (1992), *aff'd in part, rev'd in part*, 335 N.C. 209, 436 S.E.2d 822 (1993). The former law merely protected employees against discharge and demotion. N.C. Gen. Stat. § 97-6.1(a) (repealed 1992). By enacting REDA, however, the General Assembly expanded the definition of retaliation to include "the discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment." N.C. Gen. Stat. § 95-240(2) (1999).

In a claim brought pursuant to the former provision, section 97-6.1(a), this Court stated that an employee bears the burden of proof in retaliatory discharge actions. *Morgan v. Musselwhite*, 101 N.C. App. 390, 399 S.E.2d 151 (1991). "The statute does not prohibit all discharges of employees who are involved in a workers' compensation claim, it only prohibits those discharges made *because* the employee exercises his compensation rights." *Id.* at 393, 399 S.E.2d at 153 (citation omitted). Furthermore, our appellate courts indicated in applying the former provision that a plaintiff fails to make out a case of retaliatory action where there is no close temporal connection between the filing of the claim and the alleged retaliatory act. *See Shaffner v. Westinghouse Electric Corp.*, 101 N.C. App. 213, 398 S.E.2d 657 (1990); *Morgan*, 101 N.C. App. 390, 399 S.E.2d 151.

**[1]** As a preliminary matter, we must address the issue of whether the failure to renew an employment contract may qualify as a retaliatory action in violation of REDA. As stated above, in enacting REDA, the General Assembly broadly defined retaliatory action as "the discharge, suspension, demotion, retaliatory relocation of an employee, or *other adverse employment action* . . . ." N.C.G.S. § 95-240(2) (emphasis added). As the failure to renew an employee's contract produces the adverse result of terminating her employment, the plain language of the statute suggests that non-renewal of an employment contract falls within the scope of REDA. Furthermore, while our appellate courts have not spoken on this issue, we find persuasive authority from other jurisdictions holding that the failure to renew an employment contract may constitute actionable conduct. *See, e.g., Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471 (1977); *Perry v. Sinderman*, 408 U.S. 593, 33 L. Ed. 2d 570 (1972); *Kramer v. Logan County School District No. R-1*, 157 F.3d 620 (8th Cir. 1998); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, reh'g denied, 660 F.2d 497 (5th Cir. 1981); *Daly v. Exxon Corp.*, 63 Cal. Rptr. 2d 727 (Cal. Ct. App. 1997). We therefore hold that the failure to renew an employment contract constitutes an adverse employment action for purposes of REDA.

**[2]** We now address plaintiff's argument that a genuine issue of material fact existed as to whether defendant took retaliatory action against her because she filed a workers' compensation claim or threatened to do so. *See* N.C.G.S. § 95-241. In the present case, plaintiff filed a workers' compensation claim on 10 June 1994 after she broke a vertebra in her spine while opening a security door at

the jail annex. Defendant entered into three new contracts with plaintiff after she filed the claim. Plaintiff's final contract with Durham Tech expired on 28 June 1995, over a year after she filed for compensation.

Plaintiff argues that she was terminated after a second injury similar to the employee in *Abels*, 335 N.C. 209, 436 S.E.2d 822, and that a discharge following a second injury is sufficient to show that an employee was discharged to prevent the filing of a workers' compensation claim. However, plaintiff's second injury occurred in the home when she fell in a bathtub on 11 February 1995 and broke her leg. Durham Tech would not have anticipated a workers' compensation claim based on plaintiff's second injury as it was not work related. In contrast to *Abel*, the circumstantial evidence in the case *sub judice* does not suggest that defendant failed to renew plaintiff's contract in order to forestall the filing of a workers' compensation claim. Defendant entered into three new contracts with plaintiff after she filed a workers' compensation claim, and defendant's refusal to renew plaintiff's contract was not closely temporally related to her workers' compensation claim in that it took place over a year after she filed for compensation. *See Shaffner*, 101 N.C. App. 213, 398 S.E.2d 657.

We conclude that there was no genuine issue of material fact as to whether defendant took retaliatory action against plaintiff because she filed a workers' compensation claim or threatened to file one. As such, we hold that the trial court did not err in granting defendant's Motion for Summary Judgment on plaintiff's claims under the REDA.

## II. AMERICANS WITH DISABILITIES ACT CLAIM

[3] By her second assignment of error, plaintiff argues that the trial court erred in directing a verdict against her on her claims under the Americans with Disabilities Act. We agree.

In deciding whether to direct a verdict at the close of all of the evidence, "the trial court must determine whether the evidence, when considered in the light most favorable to the nonmovant, is sufficient to take the case to the jury." *Southern Bell Telephone and Telegraph Co. v. West*, 100 N.C. App. 668, 670, 397 S.E.2d 765, 766 (1990), (citations omitted), *aff'd*, 328 N.C. 566, 402 S.E.2d 409 (1991) (citations omitted). If there is more than a scintilla to support a plaintiff's case, the motion must be denied. *Edwards v. West*, 128 N.C. App. 570, 495 S.E.2d 920, *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998). "Where the question of granting a directed verdict is a close one, the better

practice is for the trial judge to reserve his decision on the motion and submit the case to the jury." *Id.* at 573, 495 S.E.2d at 923 (citation omitted).

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (1994), provides in pertinent part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (1994). To prevail on an ADA claim, the plaintiff must prove that: (1) she has a disability as defined by the ADA; (2) she is qualified for the job; and (3) she was unlawfully discriminated against by an employer because of her disability. *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683 (4th Cir. 1997).

Under the ADA, the term "disability" is defined as "a physical . . . impairment that substantially limits one or more of the major life activities of such individual[.]" 42 U.S.C. § 12102(2)(A) (1994). In the present case, plaintiff contracted polio at the age of four, and her limited movement and mobility required the use of a wheelchair and crutches since the onset of the disease. At trial, plaintiff's physician testified that plaintiff's major life activity of walking was substantially limited by her condition. Based upon these and other pertinent facts relating to plaintiff's limitations, we conclude that plaintiff presented sufficient evidence indicating that she was disabled for purposes of the ADA.

Only a "qualified individual with a disability" may prevail on a discrimination claim under the ADA. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994). "Essential functions" of the job are the fundamental job duties of the person with the disability "that bear more than a marginal relationship to the job at issue." *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993) (citation omitted).

The term "reasonable accommodation" may include—

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

In the present case, defendant argues that plaintiff was not a qualified individual in that Haverland, inmate programs director, banned plaintiff from entering the jail after he confirmed anonymous allegations of plaintiff's illegal conduct. According to defendant, plaintiff was therefore unable to perform the essential function of her job of teaching at the jail. We cannot agree.

Durham Tech received the anonymous calls on 21 June and 24 June 1995. Haverland confirmed the allegations of the first call to his satisfaction on 23 June 1995. However, Conley informed plaintiff on 16 June 1995 that she would not be returning to the jail and that he had already replaced her. As such, construing the evidence in the light most favorable to the plaintiff, reasonable fact-finders could conclude that defendant had decided not to renew plaintiff's contract before the anonymous phone calls were received and before plaintiff was banned from the jail. *See Chardon v. Fernandez*, 454 U.S. 6, 70 L. Ed. 2d 6 (1981) (holding that discriminatory act occurs on the date an employee is notified of an impending discharge rather than on the date employment ends). An employer may not rely on evidence of employee misconduct which is acquired after the employment decision in question to defend the employment decision. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 130 L. Ed. 2d 852 (1995). As a reasonable juror could conclude that the anonymous phone calls were after-acquired evidence, defendant's argument that plaintiff was not a qualified individual because she was banned from the jail must fail.

[4] Defendant further argues that plaintiff was not a "qualified individual" because her "poor attendance made her nonqualified to teach in the jail." Before addressing defendant's specific issue, we note that by all accounts, plaintiff was an excellent teacher who was able to carry out the instructional functions of her job using her wheelchair. Certainly, plaintiff's qualifications as an instructor are not at issue here. However, this does not end our inquiry.

"In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." *Tyndall v. National Educ. Centers*, 31 F.3d 209, 213 (4th Cir. 1994); *see also Waggoner v. Olin Corp.*, 169 F.3d 481 (7th Cir. 1999) (holding that regular attendance was an essential function); *Carr v. Reno*, 23 F.3d 525 (D.C. Cir. 1994) (holding same in relation to federal Rehabilitation Act); *Jackson v. Veterans Admin.*, 22 F.3d 277, *reh'g and suggestion for reh'g en banc denied*, 30 F.3d 1500 (11th Cir. 1994) (same). Accordingly, "a regular and reliable level of attendance is a necessary element of most jobs." *Tyndall*, 31 F.3d at 213 (citations omitted).

[I]t is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibility that may lead to a finding that an employee is unable to perform the duties of [her] job. Consideration of the degree of excessiveness is a factual issue well suited to a jury determination.

*Haschmann v. Time Warner Entertainment Co., L.P.*, 151 F.3d 591, 602 (7th Cir. 1998).

Plaintiff entered several contracts with Durham Tech for five periods of employment beginning in November 1993. Plaintiff taught through the first two periods, ending May 1994, without incident. For the third period, plaintiff's contract specified that she was to teach for thirteen weeks, beginning 30 May 1994 and ending 26 August 1994. However, on 8 June 1994, only a week after beginning the third contract period, plaintiff fell at the jail and, as a result, was unable to complete the third employment period.

For the fourth employment period, plaintiff was to teach twelve weeks, beginning 8 January 1995 and ending 22 March 1995. However, following her fall at home in February, plaintiff missed approximately two weeks of the twelve-week period. Plaintiff, with the assistance of a wheelchair, taught the entire fifth employment period without incident.

Dean Clark testified that good and dependable attendance was an important function for instructors affiliated with Durham Tech, especially in incarcerated, "off site" situations. Clark explained, "[T]o get substitute teachers who are pre-qualified, for example, who have been cleared, oriented, etcetera, who are suitable for teaching in an incarcerated environment, is a problematic matter." Clark further tes-

tified that plaintiff's attendance record was a concern in the decision to offer her a transfer.

To support its argument that plaintiff's attendance record did not support a finding that plaintiff was qualified, defendant cites *Tyndall*, 31 F.3d 209. However, the facts of *Tyndall* are distinguishable from the facts *sub judice*. In *Tyndall*, the Fourth Circuit found an ADA claimant was not qualified for her position as a business school instructor based upon her attendance record. The employee missed a total of forty days of a seven-month work period. With the exception of ten days, the employee's absences were unrelated to her disability.

Prior to returning to work as scheduled following almost a month of leave, the plaintiff employee requested yet another extended absence. The plaintiff's employer in *Tyndall* informed the employee that she could return to work as scheduled without penalty. However, the employer would not agree to yet another extended absence. The employer explained that if the employee was unable to return to work as scheduled, she would miss the beginning of an instructional cycle for a third time. The employer further explained that students and other teachers had complained about the employee's absence and that any further period of absence would disrupt the school's operation.

In the instant case, plaintiff was able to teach three out of five employment periods without incident and one employment period in which she missed only two weeks out of twelve weeks of classes. It was only during one employment period that plaintiff missed a significant number of classes. Unlike the employee in *Tyndall*, plaintiff's absences were due solely to complications related to her disability and did not establish a clear pattern of absenteeism. Furthermore, following her significant period of absence during the third employment period, defendant did not express that the extended absence was disruptive or excessive and even offered her two additional periods of employment. Finally, unlike in *Tyndall*, plaintiff's employment relationship with defendant did not end solely because of excessive absenteeism.

Federal circuit courts that have found employees unqualified because of their attendance records generally do so based on more egregious absenteeism than existed in the instant case. *See, e.g., Waggoner*, 169 F.3d 481 (finding disabled employee unqualified where she was on medical leave for five and a half months and further

missed work or was late forty times during a twenty-month period of employment); *Halperin v. Abacus Technology Corp.*, 128 F.3d 191 (4th Cir. 1997) (finding employee unqualified under ADA where he missed forty-six days of a six-month employment period and further expressed he was unable to work for an additional five months at the time of his termination); *Carr*, 23 F.3d 525 (finding employee unqualified under similar federal Rehabilitation Act provision where employee missed months at a time over a period of several years, did not explain some of the absences, and did not improve her attendance record even after employer's reasonable accommodations). *But cf. Jackson*, 22 F.3d 277 (finding temporary employee unqualified under Rehabilitation Act where employee missed six days out of a two and one-half month employment period).

While we recognize that determining whether plaintiff was a "qualified individual" is a close question, there are arguments which support a finding that plaintiff's absences were excessive in light of her unique employment situation—substitute teachers were hard to find, the classes were only for a short period of time and thus, any absence may be significant, etc. However, viewing the evidence in the light most favorable to the plaintiff, we conclude that a reasonable jury could find, based upon all of the evidence, that plaintiff was qualified even in light of her attendance record.

Finally, the ADA specifies that no employer "shall discriminate . . . *because of* the disability of [an] individual." 42 U.S.C. § 12112(a) (emphasis added). The term "discriminate" includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee," 42 U.S.C. § 12112(b)(1), as well as "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant[,]" 42 U.S.C. § 12112(b)(5)(B).

With the exception of the Sixth Circuit, all federal circuit courts that have addressed this issue in a published opinion have found that "because of" does not mean solely because of; rather, to establish a violation of the ADA, a plaintiff need only prove that discrimination based on her disability was a determining or motivating factor in an adverse employment action. *Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999); *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736

**JOHNSON v. TRUSTEES OF DURHAM TECH. CMTY. COLL.**

[139 N.C. App. 676 (2000)]

(10th Cir. 1999); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131 (8th Cir.), *cert. denied*, 528 U.S. 818, 145 L. Ed. 2d 51 (1999); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029 (7th Cir. 1999); *Walton v. Mental Health Assoc.*, 168 F.3d 661 (3d Cir. 1999); *Newberry v. East Texas State University*, 161 F.3d 276 (5th Cir. 1998); *Feliciano v. State of R.I.*, 160 F.3d 780 (1st Cir. 1998); *McNely v. Ocala Star-Banner* Corp., 99 F.3d 1068 (11th Cir. 1996). *But see Brohm v. JH Properties, Inc.*, 149 F.3d 517 (6th Cir. 1998). In the case *sub judice*, the trial court erroneously directed a verdict in favor of Durham Tech because plaintiff had failed to prove that she was terminated based solely upon her disability. Applying the correct standard, we conclude that a reasonable jury could find plaintiff's disability was at least a motivating or determinative factor in her discharge. Defendant admitted to plaintiff, among other things, that her presence at the jail and the possibility that she would suffer another fall "could prove to be a liability for Durham Tech." Certainly, defendant presented evidence of other concerns considered in the decision, such as plaintiff's attendance record and her safety. However, to recover, plaintiff need not prove that her disability was the sole reason defendant took the adverse employment action, but only that it was a motivating factor. As such, the court erred in directing a verdict based on this issue.

[5] Defendant contends that even if the "determining factor" test is applicable to the instance case, it was still entitled to a directed verdict. Defendant argues that there is a "powerful presumption" of non-discrimination because the same person who hired plaintiff, fired her. We must disagree.

In *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991), the Fourth Circuit held, in an age discrimination case, that where the employer advances a legitimate, nondiscriminatory reason for its adverse action,

> the hirer and the firer are the same individual[,] and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.

The *"Proud* inference" has been extended to a variety of employment discrimination cases, including those arising under the ADA. *See, e.g., Tyndall*, 31 F.3d 209 (applying *Proud* to an ADA case).

In the instance case, the evidence was sufficient to indicate that the same person who hired plaintiff did not fire her. Conley, the per-

son who hired plaintiff, testified that at some point during the Spring of 1995, Dean Clark encouraged him to consider reassigning plaintiff to a location other than the jail. Conley further testified that Clark asked him to consider a reassignment after discussing it with Durham Tech's chief financial officer, Ed Moore. Conley stated that prior to his conversation with Clark, he was not concerned about having plaintiff teach at the jail.

When asked specifically who made the decision to not reassign plaintiff to the jail, Conley first testified that it was a consensus of Clark, another administrator, and himself. However, further testimony revealed that in his deposition, Conley stated that prior to informing plaintiff she would not be reassigned to the jail, Clark had already instructed Conley not to reassign plaintiff to her present position. As such, the evidence, construed in the light most favorable to the plaintiff, demonstrates that the same person did not hire and fire plaintiff, and therefore, defendant was not entitled to an inference of nondiscrimination. Accordingly, we hold that the court erred in directing a verdict for defendant with regard to plaintiff's claim under the ADA.

For the reasons stated herein, we affirm the trial court's order granting defendant's summary judgment motion based on plaintiff's state law claim of retaliatory discharge. Furthermore, we reverse the decision of the trial court directing a verdict based on plaintiff's ADA claim and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part.

Judges GREENE and WALKER concur.