IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-633

Filed 21 May 2024

Wake County, No. 19 CVS 11540

BRITTANY JEANNE COTTLE,
TERRY ALAN COTTLE and
CYNTHIA BALKCUM COTTLE,

                        Plaintiffs,

        v.

KEITH PINKEY MANKIN, MD; JEANNE HALL,
RN, MSN, FNP-C; BRADLEY K. VAUGHN, MD;
WALLACE F. ANDREW, JR., MD; KARL STEIN;
JOSEPH U. BARKER, MD; MARK R. MIKLES, MD;
RALEIGH ORTHOPAEDIC CLINIC, P.A.;
and RALEIGH ORTHOPAEDIC RESEARCH
FOUNDATION,

                        Defendants.

Appeal by plaintiffs from summary judgment entered 16 March 2022 by Judge

William R. Pittman in Wake County Superior Court. Heard in the Court of Appeals

25 January 2023.[1]

      *Mast, Johnson, Trimyer, Wright, Booker & Van Patten, P.A., by Charles D. Mast and Nichole G. Booker, for plaintiff-appellants.*

      *Huff, Powell, & Bailey, PLLC, by Pankaj Shere, for defendant-appellants.*

---

      [1] This matter was orally argued before Judges Dillon, Murphy, and Flood. Judge Murphy subsequently recused. By Order entered on 6 May 2024, Judge Stading substituted for Judge Murphy to consider the matter based on the briefs and record and on the recording of the 25 January 2023 oral argument.

DILLON, Chief Judge.

Plaintiffs commenced this action against Defendants arising out of medical care Plaintiff Brittany Jeanne Cottle received for back pain, while a minor, from Dr. Keith Pinkney Mankin, MD, specifically from injuries she claimed she suffered as a result of two surgeries he performed on her, the last being performed on 23 November 2012. Plaintiffs Terry Alan Cottle and Cynthia Balkum Cottle are Brittany's parents.

Plaintiffs commenced this action in March 2017, more than four years after Brittany's last surgery, against Dr. Mankin and others, alleging medical malpractice claims and other claims, including negligent retention. In all claims, Plaintiffs seek damages for the injuries they alleged Brittany suffered from Dr. Mankin's surgeries.

Through a series of orders, the trial court granted summary judgment for Defendants on *all* claims. On appeal, Plaintiffs challenge the grant of summary judgment only as to some claims. They do not appeal the grant of summary judgment on their medical malpractice claims, apparently conceding that those claims are barred by the four-year statute of repose. *See* N.C. Gen. Stat. § 1-15 (2023). Further, Plaintiffs do not appeal the grant of summary judgment on any claim they alleged against Dr. Mankin (medical malpractice or otherwise); and, therefore, Dr. Mankin is not involved in this appeal.

Rather, in this appeal, Plaintiffs challenge only the grant of summary judgment on claims they characterize as not being medical malpractice claims,

essentially contending that those claims survived the operation of the statute of repose. Those claims are as follows:

Some claims involve allegations of conduct by certain Defendants occurring up to 2012, before and during Dr. Mankin's care of Brittany, specifically, the failure of these Defendants to act upon their knowledge of complaints and concerns regarding Dr. Mankin's general care of patients, unrelated to his care of Brittany.

For instance, Plaintiffs allege claims of negligent retention and/or supervision against Defendant Raleigh Orthopaedic Clinic, P.A., and Defendant Raleigh Orthopaedic Research Foundation (collectively, "ROC"). The Clinic is a physician practice with whom Dr. Mankin was associated while he treated Brittany. The Foundation, now dissolved, was a non-profit organization associated with the Clinic. Dr. Mankin was associated with ROC until early 2013.

Also, Plaintiffs assert claims of fraud and constructive fraud, breach of fiduciary duty and negligent/intentional infliction of emotional distress against ROC and several individuals associated with ROC prior to 2013 who allegedly knew of issues that Dr. Mankin had with other patients. These other Defendants include: (1) Defendant Jeanne Hall, a nurse who worked under and assisted Dr. Mankin in his care for Brittany; (2) Defendant Bradley K. Vaughn, MD, who served as ROC's president until 2008, where evidence shows that another doctor expressed a concern to him that Dr. Mankin was performing unnecessary back surgeries on young girls and that he told Dr. Mankin that "half of Raleigh" thinks Dr. Mankin is wrong in

providing such treatment and to be careful; (3) Defendant Wallace F. Andrew, Jr., MD, a doctor associated with ROC who expressed concerns about Dr. Mankin, recommending in 2012 that Dr. Mankin be disassociated with ROC, a recommendation which went unheeded for a time; and (4) Defendant Karl Stein, who served as the executive director of ROC and who received numerous complaints regarding Dr. Mankin, including three cases in 2012, yet ROC retained its association with Dr. Mankin through 2012, the time during which Dr. Mankin performed his last surgery on Brittany.

Other claims involve conduct by certain Defendants occurring after 2012, after Dr. Mankin last performed surgery on Brittany. These claims are asserted against Defendants Joseph U. Barker, MD, and Mark R. Mikels, MD, who were associated with ROC and who saw Brittany in 2016 when she returned after over three years, complaining of pain from Dr. Mankin's earlier surgeries. Plaintiffs assert claims of breach of fiduciary duty, constructive fraud, fraud, and negligent and/or intentional infliction of emotional distress. Essentially, Plaintiffs allege Drs. Barker and Mikels did not disclose that Dr. Mankin had provided bad care, which became (or should have become) evident to them during their 2016 interaction with Brittany; that Dr. Mankin had issues with other patients; or the reasons Dr. Mankin was no longer associated with ROC. Evidence shows that neither doctor informed Brittany that screws in her hip inserted by Dr. Mankin in 2012 were ineffective and that a spinal fusion performed by Dr. Mankin in 2012 was flawed.

## I.     Factual Background

The following is a more detailed discussion of the evidence.  In June 2010, Brittany, then 14 years old, sought treatment for back pain at ROC.  During an appointment, Dr. Mankin diagnosed Brittany with spinal stenosis and lumbar stress syndrome.  Three months later, in September 2010, Brittany underwent an MRI, which did not indicate stenosis.  However, the next month, in October 2010, Dr. Mankin recommended that Brittany undergo fusion surgery.  During his pre-operative diagnosis, Dr. Mankin diagnosed Brittany with "spondylolysis with stenosis L5-S1."  This was Dr. Mankin's first mention of a spondylolysis diagnosis.

Around or about late 2011 or early 2012, the father of another of Dr. Mankin's surgical patients complained to Dr. Andrew and Defendant Stein that Dr. Mankin never actually performed the fusion he claimed to have performed on his daughter and that the surgery he performed was unnecessary.  On 12 March 2012, Dr. Neil Vining, a pediatric orthopedist newly admitted to ROC, presented three pediatric cases to Defendant Stein, Dr. Andrew, and an officer of Medical Mutual Insurance Company demonstrating that Dr. Mankin was a significant danger to his patients.  The Company officer recommended offering settlements for the mistreatment, and Dr. Andrew suggested that Dr. Mankin be fired.  However, Dr. Mankin continued to practice at ROC throughout 2012.

On 29 March 2012, an ROC doctor received an email from an outside practitioner, describing the "community's concern" with Dr. Mankin's "bad results." He gave a printed copy of the email to ROC's then executive director, Mr. Stein.

During July 2012, Brittany returned to Dr. Mankin with continued back pain. On 23 November 2012, with the assistance of Nurse Hall, Dr. Mankin performed a second surgery on Brittany, a left sacroiliac fusion and a stabilization fixation with three screws. Although Dr. Mankin's operative report stated the screws were properly fixed, operating room imaging studies demonstrated that two of the three screws were not fixed. Dr. Mankin did not perform any more surgeries on Brittany.

In early 2013, Dr. Mankin underwent a peer review after another ROC doctor had shared his intention to send a letter to WakeMed expressing his view that Dr. Mankin was a danger in the way he treated some of his patients. On 13 March 2013, following the review, Dr. Mankin resigned from ROC. As part of a separation agreement between ROC and Dr. Mankin, the parties agreed they would not disparage one another professionally.

ROC never reported any concerns about Dr. Mankin to the North Carolina Medical Board ("NCMB"), and Dr. Mankin subsequently opened his own private practice. Upon learning of this, Dr. Vining wrote a letter to the NCMB, detailing surgeries, which Dr. Mankin performed without any legitimate indications that the surgeries were necessary, and Dr. Mankin's misrepresentation of findings to justify performing such surgeries. After receiving Dr. Vining's letter, the NCMB issued a

Non-Disciplinary Consent Order, under which Dr. Mankin agreed to no longer perform surgery, to move from North Carolina to pursue non-medical interests, and to not return to North Carolina to practice medicine.

In 2016, Brittany's back pain recurred, and Plaintiffs called ROC to schedule an appointment. Brittany found that Dr. Mankin no longer practiced at ROC and scheduled an appointment with Dr. Mikles, who had participated in Dr. Mankin's 2013 peer review. During two visits to ROC, neither Dr. Mikles nor Dr. Barker informed Brittany that the screws in her hips were ineffective, that her spinal fusion was flawed, that Dr. Mankin had been asked to resign, that Dr. Mikles was involved with the review board that triggered Dr. Mankin's resignation, or that Dr. Mankin could no longer practice medicine in North Carolina. Shortly after her visits with Dr. Mikles, Brittany saw another doctor associated with another practice, who told her family that Brittany never had spinal stenosis nor spondylolysis, that there was little evidence of a fusion ever having occurred, that she did not need the SI joint fusion, and the screws used during this fusion were never properly placed.

On 21 March 2017, pursuant to a 21 November 2016 order extending the statute of limitations under North Carolina Rule of Civil Procedure 9(j), Plaintiffs filed a Complaint against Defendants alleging medical malpractice, breach of fiduciary duty, constructive fraud, fraud, and other related claims. Four months later, in July 2017, the trial court granted WakeMed's motion to dismiss all claims against it, finding they were barred by the four-year statute of repose under N.C.Gen.

Stat. § 1-15(c). Later that month, the trial court also entered an order dismissing the medical malpractice claims against Dr. Mankin and Nurse Hall, and the negligence and/or gross negligence claims against Dr. Vaughn and Dr. Andrew—the ROC doctors who had expressed concerns prior to 2013 about Dr. Mankin's work.

Defendants filed for summary judgment on the remaining claims. On 16 March 2022, after a hearing on the matter, the trial court entered its order granting Defendants' motion for summary judgment. Plaintiffs appealed.

## II.    Analysis

Our standard of review from a summary judgment order is *de novo*. *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). Summary judgment should be upheld "when the record shows that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." *Raymond v. Raymond*, 257 N.C. App. 700, 708, 811 S.E.2d 168, 173–74 (2018). When considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Johnson v. Trs. of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 683, 535 S.E.2d 357, 362 (2000).

Our General Statutes provide a four-year statute of repose for medical malpractice claims. N.C. Gen. Stat. § 1-15(c). Our Supreme Court has expressed that our General Assembly "did not intend for actions premised on medical malpractice to be instituted more than four years after the last allegedly negligent act[.]" *Udzinski v. Lovin*, 358 N.C. 534, 537, 597 S.E.2d 703, 706 (2004).

Our General Statutes define a medical malpractice action as a "civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a) (2023).

We have carefully reviewed the briefs of the parties and the evidence in the record and conclude that the trial court erred in granting summary judgment on Plaintiff's claim against ROC for negligently retaining Dr. Mankin as an employee of the Clinic to perform pediatric surgeries. We further conclude, however, that the trial court did not err in granting summary judgment on all other claims challenged by Plaintiffs in this appeal.

We first address the claims against ROC for negligent retention of Dr. Mankin. Our Supreme Court has recently reiterated that our State recognizes "that an employer's duty to exercise reasonable care of its employment and retention of employees could extend to [customers and clients]." *Keith v. Health-Pro Home Care Servs. Inc.*, 381 N.C. 442, 451, 873 S.E.2d 567, 575 (2022). Our Court has held that negligent retention claims can extend to a hospital or group for negligent acts of their employees and doctors. *See Willoughby v. Wilkins*, 65 N.C. App. 626, 637, 310 S.E.2d 90, 97 (1983) (recognizing claim of negligent hiring against hospital for the hiring of a physician); *Dunkley v. Shoemate*, 121 N.C. App. 360, 465 S.E.2d 319 (1996). (negligent hiring claim against hospital for acts of a resident in psychiatry).

It could be argued that ROC's actions in retaining Dr. Mankin are, in fact, claims for medical malpractice, and thus barred by the statute of repose. However, the plain language of Article 1B, Chapter 90 of our General Statutes, which concerns medical malpractice actions, does not suggest that the alleged actions of ROC for negligently retaining Dr. Mankin fall within the definition of medical malpractice. Specifically, under the Article, only a "health care provider" can be liable for "medical malpractice." N.C. Gen. Stat. § 90-21.11 (2023). Section 90-21.11(a) defines who is considered a "health care provider." The only non-human entities incorporated within the definition of "health care provider" are "[a] hospital, a [duly licensed] nursing home and [a duly licensed] adult care home."

Section 90-21.11(2) defines a "medical malpractice action" as either a claim for damages (1) "for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical . . . care by a health care provider" or (2) "against a hospital, a [duly licensed] nursing home, or [a duly licensed] adult care home [alleging] a breach of administrative or corporate duties, including [ ] allegations of . . . negligent monitoring and supervision . . . ."

It may be that the actions alleged against ROC for negligent retention are a breach of its administrative duties and, therefore, fall within a claim for medical malpractice. However, the plain language of Section 90-21.11(2) does not include a medical practice, such as ROC, within its gamut. There is no evidence that ROC is a hospital, a nursing home, or adult care home. Accordingly, we must conclude that

Plaintiffs' claim against ROC for negligent retention is not barred by the statute of repose, as the claim is not one of malpractice under the relevant statute.

We, however, conclude that the trial court did not otherwise err in granting summary judgment on the other claims challenged by Plaintiffs in this appeal. For instance, regarding the claims against Drs. Barker and Mikels for alleged torts they committed in their treatment of Brittany in 2016, approximately four years after Dr. Mankin last operated on Brittany, Plaintiffs do not point to any evidence that Brittany was further damaged by their care. Plaintiffs do not allege that either Dr. Barker or Dr. Mikels injured Brittany in any way during their treatment of her, but instead allege that all her injuries sprung from the surgeries performed by Dr. Mankin. Plaintiffs essentially allege that Drs. Barker and Mikels likely came to learn in 2016 that Dr. Mankin botched his 2012 surgery but failed to disclose this information to Brittany. Brittany only learned of Dr. Mankin's allegedly poor treatment of her when she saw a doctor at another practice shortly after Dr. Barker and Dr. Mikels saw her.

To the extent that the claims alleged against Drs. Barker and Mikels are medical malpractice claims, they are not barred by the statute of repose, as these doctors saw Brittany in 2016, well within four years of the commencement of this action. However, assuming Plaintiffs met their burden of producing evidence at the summary judgment hearing that Drs. Barker and Mikels' actions were tortious, Plaintiffs point to no evidence showing how Brittany was damaged by Drs. Barker

and Mikels' conduct. She was already allegedly injured by Dr. Mankin's surgeries when she presented herself to Drs. Barker and Mikels in 2016. And Plaintiffs do not point to any evidence showing how her injuries worsened or how she was otherwise damaged by Drs. Barker and Mikels. Accordingly, we conclude that the trial court did not err by granting summary judgment for all claims against all Defendants for any actions of Drs. Barker and Mikels in their treatment of Brittany in 2016.

We next address the claims against ROC, Drs. Vaughn and Andrew, and Mr. Klein under various theories of fraud, breach of fiduciary duty, and for negligent/intentional infliction of emotional distress. Plaintiffs cite evidence in the record that, when viewed in the light most favorable to Plaintiffs, tend to show that these individuals became aware that Dr. Mankin was performing unnecessary surgeries on juvenile patients before he performed the surgeries on Brittany.

Our Supreme Court recognizes that a plaintiff may have a claim for failing to disclose information to a patient (*e.g.*, a fraud concealment) apart from a malpractice claim. *See*, *e.g.*, *Watts v. Cumberland Cnty. Hosp. Sys., Inc.*, 317 N.C. 110, 116–17, 343 S.E.2d 879, 884 (1986). We have reviewed the evidence cited by Plaintiffs and conclude that such evidence, even viewed in the light most favorable to Plaintiffs, fails to allege a cause of action. For instance, *Watts* and similar cases concern concealment of facts concerning the treatment of the plaintiff. However, here, Plaintiffs point to no evidence that these Defendants were aware of Dr. Mankin's treatment of Brittany, specifically. There is no allegation these Defendants knew of

Brittany's condition when she presented herself to Dr. Mankin, or of the course of treatment that Dr. Mankin recommended including the two surgical procedures, or of facts that would show the surgeries were inappropriate or poorly performed. We conclude that the trial court properly granted summary judgment to these Defendants on these claims.

In conclusion, we have carefully considered the evidence in the record and the arguments of the parties in this appeal and conclude that the trial court properly granted summary judgment on all claims challenged by Plaintiffs in this appeal, except for the claim against ROC for negligent retention of Dr. Mankin.

AFFIRMED IN PART, REVERSED IN PART.

Judges FLOOD and STADING concur.