Jesse MITCHELL, Plaintiffs,

v.

NORTHERN WESTCHESTER
HOSPITAL, Defendant.

No. 00 CIV 3704(CM)(LMS).

United States District Court,
S.D. New York.

Oct. 17, 2001.

Jesse Mitchell, White Plains, NY, pro se.

Risa M. Mish, Collazo Carling & Mish, LLP, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Pro Se Plaintiff Jesse Mitchell sued his former employer, defendant Northern Westchester Hospital Center ("the Hospital"), for failure to promote on account of race and sex and disability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.;* the New York Executive Law § 296; and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et. seq.*

On November 29, 2000, I granted the Hospital's motion to dismiss Plaintiff's claim under the Americans with Disabilities Act (Count 1). The Hospital now moves for summary judgment on Plaintiff's remaining claim. In a motion for summary judgment, this court views facts in the light most favorable to the non-moving party. *See U.S. v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## FACTUAL BACKGROUND

The Hospital hired Plaintiff, a black male, as a Material Management Aide in October 1992. He later became a Service Associate, a position with similar responsibilities. As a Service Associate, Plaintiff's duties included taking inventory; stocking equipment and supplies; cleaning equipment; and using the hospital computer to place orders and track the location of equipment and supplies. Plaintiff was also responsible for cleaning and maintaining patient rooms, transporting patients, and transporting bodies to the Hospital morgue. Plaintiff was expected to report directly to the Care Manager in order to prioritize assignments and to determine what special supplies or equipment were needed for particular patients. (Def. 56.1 St., Ex. 5)

Plaintiff has an Associate Degree in Occupational Studies with a major in Computer Office Administration from Westchester Business Institute. He acquired computer experience while working for Reader's Digest as a Computer Operator for the 20 years prior to taking his position as Service Associate at the Hospital. (Mitchell Aff., Ex. E.) He also took an advanced word processing course at Westchester Community College. (Mitchell Dep., 119; Def. 56.1 St., Exs. 13, 14.)

Plaintiff's 1995–1998 performance evaluations cited him for lack of punctuality; inability to prioritize tasks; making inaccurate computer entries; failure to keep his work area organized; failure to meet requests of staff when he was asked to provide supplies and transport patients; failure to complete work in desired time period; and failure to conform to hospital policies. (See Def. 56.1 St., Ex. 22, 23.)

On July 30, 1997, the Hospital suspended Plaintiff for two days for insubordination. Plaintiff claims he was ordered to report to a floor other than the one to which he was originally assigned. He believed this to be an improper order and he refused to obey. (Plaintiff Supplement to the Motion, Jan. 30, 2001.) The supervisor allegedly attempted to explain why the order was proper but Plaintiff continued to refuse to comply. As a result of the disagreement, the supervisor felt it was necessary to call security to accompany her while she discussed the situation with Plaintiff. (Def. 56.1 St., Exs. 16–18.)

According to hospital policy in effect since 1988, employees are ineligible for any promotion or transfer for one year following suspension. (See Kerry Flynn Aff. at 1–2; Def. 56.1 St., Ex. 24.) In January 1998, Plaintiff applied to be the Supply Services Supervisor. The job went to Jeff Siegel, a white male. In March or April 1998, Plaintiff applied for the position of Employee Coordinator, which was given to a white female, Frances Panebianco. In April or May 1998, Plaintiff applied for an Employee Scheduler position. That position was also given to a white female, Melissa Light. In May 1998 Plaintiff again applied to the position of Supply Services Supervisor, this time the position went to Konsan Sia, an Asian male. (Def. 56.1 St., Exs. 25–27.)

Plaintiff remained a Service Associate until June 1998, when he went on medical leave following injuries suffered in a car accident. In November 1999 the Hospital concluded that Plaintiff had resigned his position because he had failed to return to work after 14 months of leave. (See id.; Kerry Flynn Aff. ¶ 8; Def. 56.1 St., Ex. 35–40.)

Plaintiff filed an administrative complaint with the Equal Opportunity Employment Commission (the "EEOC") on April 15, 1999 alleging that his employer Northern Westchester Hospital Center (the "Hospital") failed to promote or trans-

fer him on account of race and sex. The EEOC issued Plaintiff a "right to sue" letter on January 13, 2000. (Def. 56.1 St., Ex. 71.)

■ Defendant now moves for summary judgment on Plaintiff's claim for discriminatory failure to promote.[1] For the reasons stated below, Defendant's motion is granted.

## DISCUSSION

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However to defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In order for Plaintiff to defeat a motion for summary judgment in a discrimination claim, he must set forth "concrete particulars" to substantiate the claim. *See Meiri v. Dacon*, 759 F.2d 989 (2d Cir.1985).

The order and allocation of proof in employment discrimination cases is well established:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.

*See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). While the burden of production may shift, the burden of proving discriminatory intent remains always with the plaintiff. *See id.* at 255, 101 S.Ct. 1089. Therefore, it remains the plaintiff's burden, on summary judgment, to raise an issue of material fact that he was terminated form his employment on the basis of race or sex.

■■ To establish a prima facie Title VII claim for failure to promote, an employee must allege that: (1) he or she is a member of a protected class; (2) he or she is

---

1. In the Reply Memorandum of Law in Support of Northern Westchester Hospital Center's Motion for Summary Judgment, Defendant addresses claims made by the Plaintiff for the first time in his Pre–Trial Order and papers submitted in opposition of Defendant's motion for summary judgment. These claims consist of a Title VII claim for discriminatory failure to promote on account of age, violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and violation of the Bargaining Agreement between the Hospital and 1199 SEIU Health Care Employees Union. Because these claims were not contained in Plaintiff's charge, are not the subject of the EEOC right to sue letter, and are not pleaded in the complaint, this court has no power to adjudicate them. I note that any attempt to file a charge with respect to these contentions at this point—two years after Plaintiff was discharged—would be untimely. *See Tubner v. West*, 1998 WL 639291, *2 (2d Cir.1998).

qualified for the job to which he or she applied; (3) he or she was denied the promotion or transfer; and (4) the denial occurred under circumstances giving rise to an inference of discrimination. *See Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir.2000). If Plaintiff fails to make out any of these four criteria, the case must be dismissed. *See Patterson v. CBS, Inc.*, 2000 WL 666337 (S.D.N.Y.2000)

There is no dispute that Plaintiff, as a black male, is a member of a protected class or that he applied for and was denied certain positions at the Hospital. What is disputed in this case is whether Plaintiff was qualified for these positions and whether the denial occurred under circumstances giving rise to an inference of discrimination.

■ An applicant is "qualified" for a position if he meets the specific criteria set out by the employer. *See Thornley v. Penton Publishing, Inc.*, 104 F.3d 26, 29 (2d Cir.1997). *See also Bloomfield v. Vizcaya*, 1999 WL 675966 (S.D.N.Y.1999). Plaintiff argues that he was qualified for the positions that he sought, relying primarily on his education and prior computer experience for support. Defendant responds that Plaintiff was not qualified, pointing to the job descriptions provided by the Hospital and Plaintiff's performance evaluations in his position as Service Associate.

Plaintiff was qualified in a basic, initial sense for the Supply Services Supervisor and Employee Scheduler positions. Since all of the criteria for the Supply Services Supervisor position were related to the Service Associate position, his experience as a Service Associate seems to qualify him. (*See* Def. 56.1 St., Ex. 73.) The criteria for the Employee Scheduler position were subjective in nature. It required "excellent" organizational skills and "exceptional" interpersonal skills and it pre-

ferred computer skills and clinical experience. (*See* Def. 56.1 St., Ex. 74.) Plaintiff possessed the computer skills. Whether or not he was excellent or exceptional at something is impossible to determine as a matter of law. On the other hand, Plaintiff was not qualified, even in a basic sense, for the Employee Coordinator position. It required that an applicant have previous interviewing experience, Plaintiff did not have this experience. (*See* Def. 56.1 St., Ex. 75; Mitchell Dep. at 36–37). There is, however, a factual dispute as to whether Plaintiff was qualified for the other positions he sought.

The final element of the prima facie case is establishing circumstances giving rise to an inference of discrimination. This inference can be established if the Plaintiff shows that the position sought went to a person outside his protected class. *See Bloomfield*, 1999 WL 675966, at *4 (stating "[a]n inference of discrimination may arise if … the position was filled by someone not a member of plaintiff's protected class") (quoting *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997)). All of the positions went to applicants outside the Plaintiff's protected class. Therefore, Plaintiff has established an inference of discrimination, and a prima facie case for failure to promote with regard to the Supply Services Supervisor and Employee Scheduler positions.

### The Hospital Offers Legitimate, Non–Discriminatory Reasons for Refusing to Promote Plaintiff:

Since Plaintiff has established the prima facie case of discriminatory failure to promote, the Hospital " 'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment ac-

tion." *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

The Hospital articulates two legitimate, non-discriminatory reasons for refusing to promote Plaintiff. According to Kerry Flynn, Director of Human Resources at the Hospital since January 2000, pursuant to the Hospital's policy in effect since 1988, Plaintiff was ineligible for receipt of a promotion or transfer because he had been suspended within a year of applying for the positions. In her affidavit she states:

> This policy requires, among other things, that to be eligible for a transfer or promotion an employee must have "a satisfactory work record." As the Hospital interprets this policy, it means that the employee must not have received a written warning or suspension within the year preceding his or her application for transfer or promotion.

(*See* Kerry Flynn Aff. at 1–2; Def. 56.1 St., Ex. 24.) The Hospital also argues that even if Plaintiff were eligible for promotion or transfer at the time he applied, he was less qualified than those applicants who were awarded the positions. In order to establish this, the Hospital submits into evidence the performance evaluations of Plaintiff and the chosen applicants; the job descriptions of the different positions; and the Hospital's policy on promotions and

transfers. (*See* Def. 56.1 St., Exs. 4, 22–24, 43–45, 51, 54–56, 73–75.)

The Hospital successfully articulates legitimate reasons for not promoting Plaintiff. Therefore Plaintiff must, through presentation of his own case, demonstrate that the proffered reason was not the true reason for the employment decision, and that race or sex was. *See Hicks,* 509 U.S. at 507, 113 S.Ct. 2742. "This burden now merges with the ultimate burden of persuading the court that [he] had been the victim of intentional discrimination. He may succeed in this either directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence." *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Plaintiff fails to do either.

### *Plaintiff Fails to Establish Discriminatory Pretext:*

■ Plaintiff argues that both of the Hospital's explanations are pretext. He claims that he was never made aware of any probationary policy at the time of his suspension and that the suspension itself was invalid. Yet he offers no proof to substantiate either claim. Moreover, if the policy really existed, and there is no evidence to the contrary, it would not matter whether Plaintiff was aware of it or not. The policy was on the books for a decade before Plaintiff's case arose. On the undisputed facts, the policy applied to Plaintiff's situation. In order for Plaintiff to establish that the Hospital's claim that his suspension made him ineligible for promotion or transfer is pretext, he would need to show either that the policy was not uniformly enforced or that it was never enforced in the past. The record contains no evidence that other Hospital employees

of a race or gender different from Plaintiff's were promoted or transferred within one year of receiving either a written warning or a suspension. Plaintiff did not even allege any such discrepancy. Therefore, Plaintiff has failed to provide any evidence of pretext.

■ Plaintiff argues further that even if the probationary period is valid, the suspension was invalid. Plaintiff received only one written warning prior to his suspension in 1997, and that was in 1994. He, therefore, argues that the suspension was not within the parameters set up in the Hospital's Progressive Discipline policy. This policy lists various steps in order of increasing severity: "Step One: a verbal warning notice, to be documented as a conference. This verbal warning as well as any subsequent written warnings, must specifically inform the employee of the infraction committed and what will happen to the employee if such infraction continues. Step Two: A written Disciplinary Action Notice. Copies of the notice are to be given to the employee and the Union delegate (if applicable) and sent to Human Resources to become part of the employees permanent record.... Step Three: Suspension; Step Four: Termination." (See Jesse Mitchell Aff., Ex. A.) In addition, the policy states that "[e]ach infraction is to be treated separately. If a reasonable period of time (6 months) has elapsed between the steps as written above, then Step One must be repeated, and so forth." (Id.)

The Hospital's disciplinary policy also states that, "Progressive discipline is suggested for most infractions of the Hospital rules and regulations. Management reserves the right to begin discipline at any step, up to and including termination." (Id.) The Hospital claims that suspension was appropriate in Plaintiff's case because he reacted to the supervisor in a threaten-

ing manner and because management had to fight with him nearly everyday about what his job entailed. (See Def. 56.1 St., Ex. 19.) Since the policy permits the Hospital to bypass progressive discipline steps for more serious infractions and Plaintiff does not dispute that the altercation which lead to his suspension occurred, Plaintiff fails to demonstrate the Hospital's decision to suspend him was pretextual.

■ Plaintiff's claim that he was the most qualified fails as well. Although he claims that he was the most qualified applicant, he offered no evidence of the other applicants' qualifications in order to demonstrate their inferiority. In addition, Plaintiff cannot second-guess the decision of the Hospital's administration as to who was most qualified for the positions available, unless it can be proven that the job criteria was set up in bad faith. See Bloomfield, 1999 WL 675966 (S.D.N.Y. 1999) (explaining "absent a showing that the employer's criteria were made in bad faith, neither the Court nor a jury may second-guess the reasonableness of an employer's criteria for employment. [...] Furthermore, although Plaintiff may disagree with Defendant's decision that Moliner and Fernandez were more qualified for the position of VP–ICM, the 'Court is not permitted to second-guess the wisdom of ... [the employer's] selection'") (quoting Orisek v. American Inst. Aeronautics and Astronautics, 938 F.Supp. 185, 192 (S.D.N.Y.1996)). See also Thornley, 104 F.3d 26 (2d Cir.1997). Plaintiff, again, neither offers evidence nor even alleges that the job criteria were set up in bad faith. Thus, Plaintiff has failed to provide any evidence that either of the explanations offered by the Hospital are pretext and, therefore, he has failed to raise an issue of material fact for trial.

*CONCLUSION*

Plaintiff has failed to raise an issue of material fact on which a jury could find that Plaintiff was discriminated against by his employer, Northern Westchester Hospital Center, on the basis of either race or sex. Plaintiff offered nothing more than a reiteration of the claims in his complaint, unsupported by any evidence of the alleged discrimination he suffered. By failing to allege concrete particulars and support those particulars with evidence, Plaintiff has failed to demonstrate to this court that a triable claim for discrimination exists. Therefore, this court grants Defendant's motion for summary judgment. This constitutes the decision and order of the court.

The clerk is directed to enter judgment and close the case.