**Earl BROWN, Plaintiff,**

v.

**SEARS AUTOMOTIVE CENTER and/or SEARS, ROEBUCK AND CO., Defendant.**

**No. 1:01CV00067.**

United States District Court, M.D. North Carolina.

June 21, 2002.

**758**

Earl Brown, High Point, NC, pro se.

John D. Cole, Robert S. O'Neale, III, Haynesworth, Baldwin, Johnson & Greaves, LLC, Charlotte, NC, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This case comes before the Court on Defendant Sears Automotive Center and/or Sears, Roebuck and Co.'s [1] ("Sears" or "Defendant") Motion for Summary Judgment [Document # 29]. Pro se Plaintiff Earl Brown ("Brown" or "Plaintiff") has brought this lawsuit alleging a violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen.Stat. § 95–240 et seq. The Court also has before it Defendant's Motion to Strike Plaintiff's May 1, 2002 Response [Document # 40]. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED. Defendant's Motion to Strike Plaintiff's May 1, 2002 Response is also GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff was employed by Sears as a tire and battery technician at its Oak Hollow

---

1. The name "Sears, Roebuck and Co." was added to the caption of this lawsuit as an additional identification of Defendant pursuant to the Magistrate Judge's May 1, 2001 Memorandum and Order [Document # 10].

Mall store in High Point, North Carolina for approximately five years. On December 14, 1999, Brown alleges that he was asked by the manager of the auto center, Ben Scism ("Scism"), to replace the battery in a customer's Ford Bronco because the battery had been recalled. (Pl.'s Dep. at 168.) Brown began the process of removing the battery when the battery caught fire and burst, causing battery acid and part of the battery box to hit Brown in the face. (*Id.* at 169.) Plaintiff alleges that Scism, although present and aware of the accident when it occurred, did not call 911 or take other appropriate steps to assist Brown after his injury. However, several other Sears employees came to Brown's assistance after the accident, and one of Plaintiff's coworkers then drove Brown to a local hospital emergency room in order to get medical treatment. As a result of the accident, Brown suffered burns to the skin, eyes, and mouth.

On or about January 20, 2000, Brown filed a complaint ("January 20, 2000 complaint") with the North Carolina Department of Labor Division of Occupational Safety and Health ("North Carolina Division of Occupational Safety and Health"). In this January 20, 2000 complaint, Brown asserted that Sears had committed the following violations: 1) Sears had not provided its employees with proper protective equipment, such as face shields, for work on batteries, 2) there was not enough ventilation in the garage to safely work on vehicles, 3) the employees were exposed to unsafe levels of brake dust, and 4) the water drain in the garage emitted hazard-

ous fumes or by-products that irritated the employees' lungs and eyes. After receiving Brown's January 20, 2000 complaint, the North Carolina Bureau of Health Compliance ("Bureau") conducted an investigation, and issued a July 6, 2000 reply to Brown informing him of its determination that all four asserted violations were unsubstantiated.[2] (Pl.'s Dep., Ex. 17, North Carolina Division of Occupational Safety and Health Compliance July 6, 2000 Letter.) However, on the same day, July 6, 2000, the North Carolina Division of Occupational Safety and Health cited Sears's Oak Hollow location with a violation of 29 C.F.R.1910.1200(e)(1), which requires that an employer maintain a written hazard communication program designed for the employees using hazardous chemicals while performing automotive repair operations. (Pl.'s February 13, 2001 Submission [Document # 3], Attachment at 42.) This violation was classified as "non-serious", and no fine was assessed against Sears for this violation. *Id.*

Because of his injuries, Brown was unable to return to work for a period of time. The parties disagree, however, as to when Brown was released by his doctor to return to work. Brown asserts that, as of May 11, 2000, he still had not been released by his doctor to return to work. (Pl.'s February 13, 2001 Submission [Document # 3], Attach. at 1 ("I wasn't released from the doctor until May 17, 2000.")) In contrast, Sears asserts that Brown never provided his supervisors with any documentation from a doctor indicating that he was unable to return to work and that, in fact, Sears received a letter dated January 14, 2000 from Doctor Ray Legen indicating

**2.** As to Brown's assertion that face shields were not provided, the North Carolina Division of Occupational Safety and Health noted that at least one of Sears's face shields had a broken strap, and that there were conflicting reports regarding whether Sears had a usable face shield available to its employees at the

time of Brown's injury. (Pl.'s Dep., Ex. 17, North Carolina Division of Occupational Safety and Health Compliance July 6, 2000 Letter.) Even so, the North Carolina Division of Occupational Safety and Health classified Brown's allegation that face shields were not provided as "unsubstantiated." *Id.*

that Brown was able to return to work with no restrictions on that same day, January 14, 2000. (Scism Aff., Attachment B.) After receiving this January 14, 2000 letter, Scism asserts that he spoke to Brown over the telephone and informed him that Brown would be scheduled to work on January 19, 2000. Brown did not report to work as scheduled, and Sears was unable to contact Brown again until mid-February of 2000. At that time, Brown notified Sears that he was under the care of another doctor who had not yet released him for work. However, Sears asserts that it never received any documentation from a doctor confirming that Brown was not yet able to return to work. Without any such documentation and after Sears made numerous attempts to contact Brown via telephone, Kathy Combs ("Combs"), the Oak Hollow Sears general manager at the time, instructed Scism to send Brown a letter informing him that if he did not contact Sears by April 8, 2000, he would be discharged for job abandonment. Brown did not respond to the letter, and Combs discharged Brown from his employment with Sears by May 11, 2000.[3]

On May 20, 2000, Brown submitted a complaint of employment discrimination to the North Carolina Department of Labor ("May 20, 2000 complaint"). In the May 20, 2000 complaint, Brown charged that Sears failed to comply with "guidelines" that resulted in his injuries, and that he was discharged on April 8, 2000. (Brown Dep., Ex. 14 at 2.) On July 25, 2000, the North Carolina Department of Labor informed Brown that it had found reasonable cause to believe Brown's allegations, and subsequently issued Brown a right-to-sue letter on September 18, 2000. On December 15, 2000, Brown filed a Complaint asserting that Sears discriminated against him in violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA") in the Superior Court of Guilford County, North Carolina.[4] Sears timely filed for removal of this action to the United States District Court for the Middle District of North Carolina and now brings this Motion for Summary Judgment.

## II. DEFENDANT'S MOTION TO STRIKE

■ As an initial matter, Defendant has filed a Motion to Strike Plaintiff's May 1, 2002 Response [Document # 40].[5] Although Plaintiff characterizes his May 1,

---

3. The parties have not clearly identified the actual date that Brown was actually terminated. Plaintiff asserts in his Complaint that he was terminated on May 8, 2000, but his May 20, 2000 complaint filed with the Department of Labor states that he was terminated on April 8, 2000. (Pl.'s Dep., Ex. 14). In its Answer [Document # 2], Defendant states that Brown was terminated on May 11, 2000.

4. The portion of Brown's Complaint that establishes his claim reads as follows: "Claimant was injured by a battery explosions [sic] and filed a safety violation with the department of OSHA on January 20, 2000....This case is about due process, discrimination, violation of the Department of OSHA. I was terminated on May 8, 2000. I hold the manager of Sears fully responsible." (Pl.'s Compl. at 1.)

5. Plaintiff's submission of the May 1, 2002 Response appears to have been in response to a letter he received from the Clerk of the U.S. District Court of the Middle District of North Carolina dated April 15, 2002, which informed Plaintiff of his right, pursuant to Local Rule of Civil Procedure 56.1, to file a Response to Defendant's Motion for Summary Judgment within thirty days after Plaintiff was served with the Motion for Summary Judgment. (Def.'s Motion to Strike, Attach. ¶ 2.) The April 15, 2002 letter may have been the source of confusion, in that while it informed Plaintiff of a right to file a Response within thirty days, the allotted thirty days to file the Response to Defendant's Motion for Summary Judgment had already expired. However, the Court notes that the belatedness of the April 15, 2002 letter does not prejudice Plaintiff, for he had timely submitted a Re-

2002 Response [Document # 38] as a Response to Defendant's Motion for Summary Judgment, Plaintiff had already filed a Response to Defendant's Motion for Summary Judgment [Document # 35] on January 28, 2002.[6] As Plaintiff is only entitled to file one Response to Defendant's Motion for Summary Judgment, the Court finds it appropriate to strike Plaintiff's May 1, 2002 Response from the record. Accordingly, Defendant's Motion to Strike Plaintiff's May 1, 2002 Response is GRANTED.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A motion for summary judgment should not be granted " 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any

circumstances.' " *Campbell v. Hewitt, Coleman & Assocs., Inc.,* 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, according that party the "benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield of Va.,* 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). Nevertheless, the non-moving party cannot rely solely on unsupported assertions to demonstrate that a genuine issue of material fact exists. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 212. Judges are not " 'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.' " *Id.* at 251, 106 S.Ct. at 2511, 91 L.Ed.2d at 213 (quoting *Schuylkill & Dauphin Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867, 872 (1871)).

#### B. Plaintiff's REDA Claim

Plaintiff brings this suit under REDA, asserting that Sears retaliated against him because of the January 20, 2000 complaint he filed with the North Carolina Division of Occupational Safety and Health.[7] De-

---

sponse to Defendant's Motion for Summary Judgment [Document # 35] on January 28, 2002 even before receiving the April 15, 2002 letter from the Clerk's office.

**6.** The January 28, 2002 Response was Plaintiff's second attempt to file a Response. Plaintiff initially filed a Response on January 16, 2002 [Document # 32], but this document was stricken from the record by the Magistrate Judge because it failed to comply with the Federal and Local Rules of Civil Procedure. (January 23, 2002 Order [Document

# 33].) The Magistrate Judge then allowed Plaintiff an extension to February 20, 2002 to file a proper Response, which Plaintiff submitted on January 28, 2002.

**7.** At this point, it is necessary for the Court to emphasize that the REDA violation is the only cause of action Plaintiff has properly asserted against Defendant. Although several statements in the documents Plaintiff has filed with the Court suggest that he is attempting to assert that Plaintiff's injury from the battery accident was due in part to Defendant's

fendant now challenges Plaintiff's claim, arguing that there is no genuine issue of material fact that would preclude a granting of judgment as a matter of law in its favor. The Court therefore turns to the issues before it.

■ In enacting REDA, N.C. Gen.Stat. § 95–241, the North Carolina legislature aimed to provide workers with a method to remedy unsafe and illegal working conditions without being punished by their employer. *Comm'r of Labor of North Carolina v. House of Raeford Farms, Inc.*, 124 N.C.App. 349, 356, 477 S.E.2d 230, 234 (1996), *review improvidently allowed*, 347 N.C. 347, 492 S.E.2d 354 (1997). To that end, REDA prohibits any retaliatory discrimination against an employee who files a complaint or initiates an inquiry under certain North Carolina statutes, including the Occupational Safety and Health Act of North Carolina ("OSHANC"), N.C. Gen. Stat. § 95–126 *et seq.*[8] To succeed on his REDA claim, a plaintiff must demonstrate that "retaliatory motive was a substantial factor in the adverse employment actions taken by the defendant." *Wiley v. United Parcel Serv. Inc.*, 102 F.Supp.2d 643, 650

(1999), *affm'd on other grounds*, 11 Fed. Appx. 176, 2001 WL 431478 (4th Cir. Apr.27, 2001). Accordingly, proof that the adverse employment action is causally connected to the plaintiff's protected activity—here, Brown's January 20, 2000 OSHANC complaint—is an essential element to a REDA claim. *Watkins v. Martin Mills, Inc.*, 1996 WL 1132745, *3 (M.D.N.C.1996).

■ Defendant asserts that Plaintiff cannot establish a necessary element of his REDA claim because there is no proof that Sears's decision to discharge Brown from his position was in retaliation for Brown's January 20, 2000 OSHANC complaint. In fact, Defendant maintains that Combs, the supervisor who discharged Plaintiff, did not know that Plaintiff had filed the January 20, 2000 OSHANC complaint. In her affidavit, Combs states that she alone made the decision to terminate Brown, based on his failure to return to work or to submit documentation as requested which would demonstrate that he was not yet released by his doctor to return to work. (Combs Aff. ¶¶ 1–4, 8.) Combs also states that she made her decision to discharge Brown without having any knowledge that

---

negligence, Plaintiff's Complaint only alleges a REDA violation and makes no reference to any other cause of action. The Court's review is limited to the scope of the Complaint, and for that reason the Court need not evaluate Plaintiff's allegations of negligence. The Court further notes that any attempt made by Plaintiff to assert that Sears acted negligently is likely barred by the exclusivity provision of North Carolina's Workers' Compensation Statute. N.C. Gen.Stat. § 97–10.1.

**8.** REDA also prohibits retaliation against employees who assert complaints pursuant to the North Carolina Workers' Compensation Act, N.C. Gen.Stat. § 97–1 *et seq.*, and the Wage and Hour Act, N.C. Gen.Stat. 95–25.1 *et seq.* The Court notes that several papers filed by Brown in this lawsuit refer to a complaint he filed with the North Carolina Department of Labor in November of 1999 regarding several days of holiday pay that he

allegedly did not receive. Despite these references and assuming without deciding that Brown's pay complaints could be classified as complaints under the Wage and Hour Act, Brown is foreclosed from asserting this argument now. In order to bring a lawsuit pursuant to REDA, a plaintiff must first file a complaint with and obtain a right-to-sue letter from the North Carolina Department of Labor. N.C. Gen.Stat. § 95–242. Brown did file a complaint with the North Carolina Department of Labor, but his complaint refers to OSHANC violations, not holiday pay violations. Brown's lawsuit is accordingly limited by the claims identified in his right-to-sue letter and his Complaint, and therefore the only issue before the Court is whether Brown was retaliated against because of his January 20, 2000 complaint of OSHANC violations. *Mitchell v. Northern Westchester Hosp.*, 171 F.Supp.2d 274, 277 n. 1 (S.D.N.Y.2001).

Brown had filed the January 20, 2000 OSHANC complaint. *Id.* Multiple federal courts have determined that a causal connection between the adverse employment action and the protected activity cannot be established when the decision-maker involved did not know that the plaintiff had engaged in the protected activity.[9] *Talley v. U.S. Postal Serv.*, 720 F.2d 505, 508 (8th Cir.1983) (affirming the district court's decision entering judgment as a matter of law for the defendant as to the plaintiff's retaliatory discharge claim when the plaintiff's supervisor terminated the plaintiff for a valid reason and had no knowledge of her prior protected activity), *cert. denied,* 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984); *McCollum v. Bolger,* 794 F.2d 602, 610–11 (11th Cir.1986) (affirming district court's finding that the plaintiff failed to establish a prima facie case of retaliation when evidence showed that the terminating supervisor did not know about the protected activity), *cert. denied, McCollum v. Tisch,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Wiley,* 102 F.Supp.2d at 651 (finding that the plaintiff did not establish a causal connection when the plaintiff's supervisor had no knowledge of the plaintiff's earlier protected activity). Given that a REDA claim must be supported by proof that retaliation motivated the employer's action, the Court finds that a REDA claim cannot be stated if the decision-making supervisor did not know that the employee had engaged in protected activity.

■ Accordingly, in order for his lawsuit to survive summary judgment, Plaintiff must now demonstrate that there is a genuine issue of material fact regarding whether Combs knew of Plaintiff's January 20, 2000 OSHANC complaint. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d 202. At this point, the plaintiff "may not rest upon the mere allegations or denials of his pleading," *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510, 91 L.Ed.2d 202, but "must 'set forth' by affidavit or other evidence 'specific facts'" supporting his case. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). In support of his position, Plaintiff has filed multiple papers, including several dozen pages of attachments, with the Court. Although these documents do not clearly identify what Brown relies on to demonstrate a causal connection between his discharge and the January 20, 2000 OSHANC complaint, a response filed by a pro se litigant is reviewed under "less stringent standards" than one drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, 654 (1972). The Court has therefore carefully reviewed Brown's arguments and attachments opposing Sears's Summary Judgment Motion with the "special judicial solicitude" reserved for those litigants, like Brown, who elect to represent themselves. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir.1985). Of course, in taking this review, the Court has also granted Plaintiff, as the non-moving party, the benefit of all reasonable inferences. Even so, the Court concludes that Plaintiff's own proof cannot support his claim of a REDA violation at this stage in the proceedings.

---

**9.** Although Plaintiff's claim is brought under North Carolina retaliation law, it has been the practice of the North Carolina Supreme Court to "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *Abels v. Renfro Corp.,* 335 N.C. 209, 218, 436 S.E.2d 822, 827 (1993). For that reason, the Court will at times utilize cases decided under federal discrimination law as persuasive authority on issues that have not yet been decided by the North Carolina courts.

Plaintiff does assert in various papers filed with the Court that he was discharged on or about May 11, 2000 because of his January 20, 2000 complaint. However, at this stage of the proceedings, Plaintiff must supplement these allegations with additional proof and cannot rely on his assertions alone.[10] *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2137, 119 L.Ed.2d 351. In this instance, Plaintiff has not refuted Scism and Combs's statements, made in their respective affidavits, that they did not know of his January 20, 2000 OSHANC complaint. In fact, Brown admitted that he had never mentioned his January 20, 2000 OSHANC complaint to Combs or Scism before he was terminated. Without being presented with additional proof suggesting that Brown's termination was connected to his OSHANC Complaint, the Court finds that Plaintiff has not demonstrated that he can meet this necessary element of a REDA claim.

In reaching the conclusion that Plaintiff cannot make a sufficient showing as to the causation element of his REDA claim, the Court has considered the fact that Plaintiff received a "merit" right-to-sue letter from the North Carolina Department of Labor stating that it had found reasonable cause to support Plaintiff's claim that Sears had violated REDA. However, such a determination by a state administrative agency, while probative, does not bind this Court to the same conclusion. It has been well established in the context of federal employment discrimination cases that a conclusory determination of a discrimination law violation by a state or federal administrative agency does not, without more, preclude summary judgment for the defendant. *Goldberg v. B. Green & Co., Inc.,* 836 F.2d 845, 848 (4th Cir.1988) (determining that a conclusory finding by the Maryland Human Rights Commission that the plaintiff had suffered from discrimination is not enough, standing alone, to salvage the plaintiff's discrimination claim); *Price v. Fed. Express Corp.,* 283 F.3d 715, 725 (5th Cir.2002) (affirming district court's decision to grant summary judgment against the plaintiff despite the Equal Employment Opportunity Commission's ("EEOC") determination letter supporting the plaintiff's discrimination allegations); *Williams v. Ala. Indus. Dev't Tr'g,* 146 F.Supp.2d 1214, 1223–24 (M.D.Ala.2001) (holding that an EEOC determination of discrimination does not automatically ensure that a plaintiff's retaliatory discrimination claim will survive summary judgment).

In this instance, the North Carolina Department of Labor's right-to-sue letter is a short one-page letter that does not include an investigative report or any explanation of the basis for its decision. Given the conclusory nature of the letter and the fact that Plaintiff has not presented proof that corroborates the North Carolina Department of Labor's finding, the Court concludes that Plaintiff cannot merely rely on the Department of Labor's letter as his sole support for his retaliatory discrimination claim. Accordingly, inasmuch as Plaintiff cannot establish a causal connection between Defendant's actions and Plaintiff's January 20, 2000 complaint, he has failed to satisfactorily support a necessary element of his REDA claim.

---

**10.** Although in some instances, the necessary causal connection can be inferred when an adverse employment action occurred very quickly after the employee engaged in protected activity, Plaintiff was not dismissed until at least three months after his OSHANC complaint. The events are thus too attenuated to allow Plaintiff to rely solely on the timing of events to establish the necessary causal connection between his discharge and his OSHANC complaint. *Shaffner v. Westinghouse Elec. Corp.,* 101 N.C.App. 213, 215, 398 S.E.2d 657, 659 (1990) (finding "no close temporal connection" when the plaintiff had engaged in protected activity three months before his subsequent termination).

In addition to the fact that Plaintiff has not demonstrated a causal connection between the alleged retaliatory conduct and the protected activity, the Court also finds that summary judgment for Defendant is appropriate based on Sears's affirmative defense. Under REDA, Sears can avoid liability even if the adverse employment action was causally connected to Plaintiff's January 20, 2000 OSHANC complaint if Sears can demonstrate "by the greater weight of the evidence" that it would have taken the same adverse action even in the absence of the employee's protected activity. N.C. Gen.Stat. § 95–241(b). Defendant has pled this affirmative defense and maintains that Brown was terminated on or about May 11, 2000 because he failed to heed several requests from Sears that he return to his employment after being released for work by his doctors.

As proof that its decision to discharge Brown was because he had abandoned his position, Defendant relies on statements by Sears's auto center manager and store manager. According to Scism, in mid-January of 2000 and in mid-March of 2000 he received medical documentation that stated that Brown was ready to return to work without any restrictions. (Scism Aff., Attachs. A, B.) Scism accordingly scheduled Brown for work, but Brown neither reported for work as scheduled nor provided documentation from any other doctors demonstrating that he was still injured and unable to work. *Id.* ¶¶ 4–6. On March 24, 2000, Scism informed Combs of Brown's extended absence without a doctor's excuse. *Id.* Combs then directed Scism to write Brown a letter informing him that he needed to respond to Sears by April 8, 2000 if he planned to resume working for Sears. *Id.* Scism wrote and sent the letter, but Sears never received a response from Brown. *Id.* For this reason, Combs decided on April 11, 2000 to terminate Brown's employment. (Combs Aff. ¶ 7.) Although Plaintiff contends that the action was retaliatory, Sears disagrees and relies upon Combs's assertion that during her two-year tenure as Sears's store manager at Oak Hollow, she had dismissed eleven other employees for excessive absenteeism or job abandonment, just as she had done in Plaintiff's case. (Combs Aff. ¶ 9, Attach. A.)

Disagreeing with Defendant's recounting of the situation, Plaintiff argues that Defendant could not dismiss him for unexcused absenteeism because he had not yet been released by his doctors to return to work. Brown's argument is significantly weakened, however, by the medical documentation received by Scism that released Plaintiff for work without restriction. The Court notes that Brown has submitted bills, appointment cards, and other documentation demonstrating that Brown had multiple medical appointments regarding his injuries, particularly to his eyes, for several months after the accident. However, the fact that Brown had reason to go to regular doctor's visits does not by itself contradict Defendant's proof that Brown had been cleared to return to work. None of the information submitted by Brown can reasonably support an inference that his doctors had decided that Brown's injuries continued to prevent him from working. Accordingly, the Court finds that there is no issue of fact that contradicts Sears's proof that Brown was terminated because of his failure to report to work or provide further documentation after Sears received notification from his doctor clearing Brown to return to his job duties.[11] Because

11. In his support, Plaintiff has also submitted an Adjudicator's Determination ("Determination") by the Employment Security Commission of North Carolina ("ESC"). Although the Determination focused on whether Brown qualified for benefits, the adjudicator states in

Sears has successfully established this defense to a REDA violation, in addition to its demonstration that Plaintiff cannot sufficiently prove a causal connection between his January 20, 2000 OSHANC complaint and his discharge, Brown cannot succeed on his REDA claim. The Court therefore holds that Sears is entitled to judgment as a matter of law and Sears's Motion for Summary Judgment is GRANTED.

## IV. CONCLUSION

After carefully reviewing all of the proof and arguments presented by Plaintiff to the Court, the Court concludes that Plaintiff's REDA claim for retaliatory discharge cannot survive summary judgment, and Defendant's Summary Judgment Motion is GRANTED. Plaintiff's case is therefore dismissed with prejudice in its entirety and is no longer scheduled for the July 8, 2002 trial calendar. Furthermore, Defendant's Motion to Strike Plaintiff's May 1, 2002 Response is also GRANTED and Plaintiff's May 1, 2002 Response shall be stricken from the record.

An Order and Judgment consistent with this Memorandum Opinion shall be filed forthwith.

### ORDER

This matter is before the Court upon Defendant's Motion for protection from trial on the dates of July 15, 2002 to July 17, 2002 and July 29, 2002 to August 2, 2002 [Document # 43]. The Court recognizes that it has discretion to grant Defen-

dant's request. However, in view of the Court's Memorandum Opinion as to Defendant's Motion for Summary Judgment [Document # 29], the Court shall exercise its discretion to deny Defendant's Motion.

It is hereby ORDERED that Defendant's Motion for protection from trial on the dates of July 15, 2002 to July 17, 2002 and July 29, 2002 to August 2, 2002 is DENIED.

### ORDER AND JUDGMENT

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Summary Judgment [Document # 29] is GRANTED. Plaintiff's Complaint is hereby dismissed with prejudice in its entirety.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's May 1, 2002 Response [Document # 40] is GRANTED and Plaintiff's May 1, 2002 Response [Document # 38] shall be stricken from the record.

the letter that Brown was discharged due to his absenteeism but adds that "Claimant [Brown] was absent under the care of physicians and provided doctor notes to the employer." (Employment Security Commission of North Carolina Determination at 1.) However, like the right-to-sue letter that the Court has previously examined, the Determination by the ESC does not provide any further information about its investigation or the facts upon which the adjudicator based her

decision. Without such information about the ESC's investigation, and given that Plaintiff has not provided the Court with any proof that a doctor has verified his claim that he was not released to return to work by April 11, 2000, the Court finds that the ESC's Determination, as a conclusory decision by a state administrative agency, does not present a genuine issue of material fact for trial. *See Goldberg,* 836 F.2d at 848.